UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BETH DIANTONIO,     )<br>    )<br>    Plaintiff,    )<br>    )<br>    v.          )<br>    )<br>CAROLYN W. COLVIN,   )<br>Acting Commissioner of Social  )<br>Security,      )<br>    )<br>    Defendant.   )<br>    ) | CIVIL ACTION<br>NO. 1:14-cv-10156-WGY |

YOUNG, D.J.                                          March 25, 2015

<u>MEMORANDUM AND ORDER</u>

## I.   INTRODUCTION

The Plaintiff, Beth DiAntonio ("DiAntonio"), appeals the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Social Security Disability Insurance Benefits and Supplemental Security Income.  DiAntonio argues that the Administrative Law Judge (the "hearing officer") erred in denying her benefits because the decision was not based on substantial evidence. DiAntonio requests that this Court reverse the hearing officer's decision and award her Social Security benefits.  Alternatively, DiAntonio asks this Court to remand this case to the

1

Commissioner pursuant to 42 U.S.C. section 405(g). The
Commissioner requests that this Court affirm the hearing
officer's decision denying DiAntonio Social Security benefits.

## A.   Procedural Posture

DiAntonio submitted applications for Social Security
benefits on March 27, 2012 and on May 19, 2012. SSA Admin.
Record Soc. Sec. Proceedings ("Admin. R.") 267-76, 277-78, ECF
No. 14.[1] The claims were initially denied on July 26, 2012, and
again after reconsideration on October 10, 2012. Id. at 132-33,
166-67. DiAntonio subsequently requested a hearing by a hearing
officer on November 13, 2012. Id. at 188-89. The hearing
officer conducted a hearing in Boston, Massachusetts, on August
20, 2013. Id. at 37-76. DiAntonio and her attorney were
present at the hearing. Id. at 37. A vocational expert also
appeared at the hearing. Id. The hearing officer denied
DiAntonio's application for Social Security benefits on August
27, 2013. Id. at 14-29. On November 21, 2013, the Appeals
Council rejected DiAntonio's appeal and made the hearing
officer's decision the final decision of the Commissioner. Id.
at 1-5.

---

[1] The administrative record is split across several ECF
entries; for clarity, this opinion will simply refer to the
continuous page numbers of the record rather than citing to each
separate ECF docket number.

On January 22, 2014, DiAntonio filed her complaint pursuant to 42 U.S.C. sections 405(g) and 1383 seeking review of the hearing officer's decision to deny her benefits. Compl., ECF No. 1. The Commissioner submitted an answer on May 27, 2014. Answer, ECF No. 13. On August 7, 2014, DiAntonio filed a motion for an order reversing the decision of the Commissioner. Mot. Reverse (With Incorporated Mem. Law) ("Pl.'s Mot. Reverse"), ECF No. 17. The Commissioner responded with a motion for an order affirming the decision on September 18, 2014. Def.'s Mot. Affirm Comm'r, ECF No. 22; Def.'s Mem. Supp. Def.'s Mot. Affirm Comm'r, ECF No. 23. DiAntonio submitted a response to the Commissioner's motion on October 1, 2014. Pl.'s Resp. Def.'s Mot. Affirm, ECF No. 24. DiAntonio filed a motion to remand the case to the Social Security Administration on October 15, 2014. Pl.'s Mot. Remand Pursuant Sentence Six ("Pl's Mot. Remand"), ECF No. 25. On October 21, 2014, the Commissioner submitted a memorandum in opposition to DiAntonio's motion to remand. Def.'s Opp'n Pl.'s Mot. Remand Pursuant Sentence Six 42 U.S.C. § 405(g), ECF No. 26. DiAntonio amended her motion to remand and submitted it to this Court on December 29, 2014. Pl.'s First Am. Mot. Remand ("Pl.'s First Am. Mot. Remand"), ECF No. 27. The Commissioner filed a reply memorandum to the amended motion on December 31, 2014. Def.'s Opp'n Pl.'s Am. Mot. Remand Pursuant Sentence Six 42 U.S.C. § 405(g), ECF No. 28.

## B. Factual Background

DiAntonio was born on October 9, 1968. Admin. R. 267. As of September 2, 2011, which is the date DiAntonio allegedly became disabled, she was forty-two years old. See id. DiAntonio contends that she became disabled due to physical and psychological limitations, including thyroid cancer, hypothyroidism, cervical squamous cell cancer, degenerative disc disease, gastroesophageal reflux disease ("GERD"), diabetes, glaucoma, depression, posttraumatic stress disorder ("PTSD"), and generalized anxiety disorder. Pl.'s Mot. Reverse 1.

### 1. Medical History

#### a. Physical Impairments

DiAntonio completed high school and worked as a dental assistant for twenty years from 1991 to 2011. Admin. R. 300-01. On August 1, 2011, DiAntonio visited Azhar Q. Mustafa, M.D. ("Dr. Mustafa"), for swelling of the neck and difficulty in swallowing. Id. at 508. Dr. Mustafa found an enlarged thyroid with one large mass in the lower portion of the left thyroid lobe. Id. Dr. Mustafa surgically removed the left side of DiAntonio's thyroid before the end of August 2011. Id. at 376-77. Further testing showed that DiAntonio had thyroid cancer, and she chose to surgically remove her entire thyroid. Id. at 504-06. The surgery was performed by Dr. Mustafa on October 11, 2011. Id. at 380.

After the surgery, DiAntonio met with oncologist Raymond Dugal, M.D. ("Dr. Dugal"), on November 4, 2011; Dr. Dugal sugsequently treated DiAntonio with radioactive iodine to eliminate residual thyroid tissue in her body in February 2012. Id. at 547-49, 737. After the treatment, Dr. Dugal wrote in a follow-up note that DiAntonio was generally doing well but still complained of some issues with occasional tightness in her neck and difficulties in swallowing liquid. Id. at 733.

DiAntonio also sought treatment from her family practitioner Holly Alexandre, M.D. ("Dr. Alexandre"), in November 2011. Id. at 432-34. DiAntonio complained that she felt very poorly, had puffy eyes, and had a poor appetite. Id. at 432. Dr. Alexandre saw DiAntonio again in December 2011 to receive treatment for what Dr. Alexandre referred to as her post-surgical hypothyroidism. Id. at 429-30. A June 2012 letter from Dr. Alexandre indicated that DiAntonio was also diagnosed with chronic fatigue and depression. Id. at 455. After complaints of teary and swollen eyes caused by her thyroid medication, DiAntonio's eyes were tested on multiple occasions in the spring of 2012. Id. at 406-10. Her vision remained 20/20 in both eyes. Id.

In August 2012, DiAntonio told nurse practitioner Lisa Farias ("Farias") that she was experiencing joint pain and stiffness in her upper and lower extremitiese but felt better

"as she is up and about for the day, moving." Id. at 488. DiAntonio also complained of fatigue. Id. at 490. Farias advised DiAntonio to get enough fluids, rest, eat healthy, and exercise. Id.

In March 2013, DiAntonio visited Dr. Dugal's office and told him that she still felt fatigued and had difficulty swallowing. Id. at 534. Dr. Dugal noted in a follow-up note that DiAntonio "appears to be doing generally fairly well with no apparent recurrent thyroid cancer." Id.

DiAntonio went to see Frederick Schnure, M.D. ("Dr. Schnure"), in June 2013 due to complaints of dysphagia and hiccups. Id. at 588. Dr. Schnure believed she had "fairly severe reflux disease, and he asked her to get bed raisers to raise the head of her bed and to eat very little before bedtime. Id. Dr. Schnure ordered a gastric emptying test late in June, and the results were normal. Id. at 725.

### b. Mental Impairments

In her first visit to Dr. Alexandre in late August 2011, DiAntonio told the doctor that she was extremely anxious about her recent thyroid cancer diagnosis and could not sleep well. Id. at 438. To relieve her anxiety, Dr. Alexandre prescribed Xanax. Id. at 440. DiAntonio reported continued anxiety issues in November 2011, so her Xanax prescription amount was increased. Id. at 434. At a follow-up visit in December 2011,

DiAntonio "fe[lt] somewhat better" but still "struggle[d] with her marriage due to personal problems." Id. at 429.

In May 2012, DiAntonio reported to Dr. Alexandre that she had anxiety issues, fearful thoughts, depressed mood, fatigue, and loss of energy. Id. at 423. She also told her doctor that it was somewhat difficult for her to meet home, work, and social obligations. Id. DiAntonio was scheduled to see a psychiatrist and was prescribed a longer acting medication, Clonazepam, in the meantime. Id. at 424.

In December 2012, DiAntonio saw nurse practitioner Ana Richards ("Richards") and reported to the nurse that she had interrupted sleep, mind racing, headaches, low energy, poor concentration, and feelings of guilt and worthlessness. Id. at 708. Richards diagnosed a single episode of major depressive disorder without psychotic features and panic disorder without agoraphobia. Id. at 709. On December 27, 2012, Richards wrote that DiAntonio had good eye contact, intact judgment, improved mood, and a linear and goal oriented thought process. Id. at 707. She felt better than the last visit. Id. Later, in January 2013, DiAntonio was not taking Xanax as much because she was satisfied with her medication regimen and her mood was improved. Id. at 703.

In March 2013, DiAntonio told Dr. Alexandre that she was extremely stressed because "[s]he [was] trying to leave her

husband who is using drugs and spending all of their money" and could not afford for him to move out because he was paying rent. Id. at 696. Later that month, DiAntonio complained that during a medical procedure the previous week she had a seizure, which she had never experienced before. Id. at 692. She said that Topamax helped her with anxiety, irritability, and weight control and requested an increased dose of Topamax. Id. at 690. At the meeting, she was cooperative and pleasant, and her "[t]hought process [was] linear and goal oriented [and] getting better." Id.

Also in March 2013, social worker Mark Theodore ("Theodore") of the Department of Oncology and Hematology of Saint Anne's Hospital wrote in a letter that DiAntonio "has been clinically depressed" and had not been able to work since the day of her thyroid cancer diagnosis. Id. at 514.

## 2. Disability Evaluation Services and TAFDC

In September 2011, DiAntonio applied for Transitional Aid to Families with Dependent Children ("TAFDC"), which is a state government welfare program that provides support to needy families with dependent children. Id. at 787-96. In October 2011, Disability Evaluation Services at the University of Massachusetts determined that, for the purpose of TAFDC eligibility, DiAntonio was disabled through June 24, 2012 due to thyroid cancer. Id. at 778, 786. DiAntonio applied for TAFDC

again and received another decision, in June 2012, that she was disabled for the purpose of TAFDC eligibility through May 25, 2013 due to thyroid cancer.  Id. at 756-58.

### 3.  Review by State Agency Physicians

#### a.  Physical Impairments

Initial review of the medical evidence submitted with DiAntonio's disability application was conducted by Robert Hughes, M.D. ("Dr. Hughes"), a medical consultant for disability Determination Services, in July 2012.  Id. at 117.  He found that DiAntonio has the physical residual functional capacity ("RFC") to lift or carry 20 pounds occasionally and 10 pounds frequently.  Id. at 116.  Also, DiAntonio could stand or walk with normal breaks for about six hours in an eight-hour workday and sit with normal breaks for about six hours in an eight-hour workday.  Id.  There were no postural, manipulative, visual, communicative, or environmental limitations to her RFC.  Id. at 116-17.

John Benanti, M.D. ("Dr. Benanti"), a state agency reviewing physician, conducted a reconsideration review of DiAntonio's application in September 2012.  Id. at 134, 145. Dr. Benanti's findings regarding DiAntonio's RFC were identical to those of Dr. Hughes.  See id. at 144-45.

#### b.  Mental Impairments

In July 2012, Kathryn Collins-Wooley, Ph.D. ("Dr. Collins-Wooley"), a psychological consultant for Disability Determination Services, conducted a psychiatric review as a part of DiAntonio's Social Security application. Id. at 115. Dr. Collins-Wooley found that DiAntonio had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Id. She also determined that DiAntonio had one or two episodes of decompensation. Id. Even though Dr. Collins-Wooley found that DiAntonio had moderate limitations in maintaining attention and concentration for extend periods, she observed that DiAntonio "[r]emains able to focus sufficiently for simple tasks at a reasonable pace." Id. at 118.

In October 2012, Stephen Spangler, Sc.D. ("Dr. Spangler"), a psychological consultant for Disability Determination Services, did a second review of DiAntonio's mental RFC assessment and concurred with Dr. Collins-Wooley's findings. See id. at 143, 146.

### 4. Hearing Before the Hearing Officer

On August 20, 2013, DiAntonio appeared in front of the hearing officer and testified regarding her Social Security benefits application. Id. at 14. She previously worked as a dental assistant but stopped working in 2009. Id. at 42. She

10

tried to go back to work after the first surgery to remove half of her thyroid, and she worked for six months. Id. at 42-43. She testified that she had to stop working again due to the diagnoses of thyroid cancer and forthcoming surgeries, the remedial thyroid cancer surgery, her thyroid condition, a mass under her arm, psychological and emotional issues, physiological tremors of her hand, diabetes type II, and glaucoma. Id. at 44-48. Since then, she has not returned to her past work but has looked for another job through the internet and the newspapers. Id. at 48. At the time of the hearing, she was not working. Id. at 42.

She struggled to do daily activities such as walking and lifting objects. See id. at 53-54. She stated that she could not walk more than ten feet because of fatigue and could not lift a gallon of milk from the floor. Id. at 53. She did not socialize with family and friends. Id. at 54. She became homeless shortly before the hearing and was planning to stay with friends. Id. at 55.

A vocational expert was examined after DiAntonio finished her testimony. Id. at 71. The expert testified that DiAntonio could not continue her past relevant work due to her medical situation, but he offered some examples of possible and relevant occupations that DiAntonio could perform despite her limitations. Id. at 72-74.

### 5.   Subsequent Social Security Benefits Award

DiAntonio filed a new disability claim on February 3, 2014.
Pl.'s First Am. Mot. Remand 2.  On October 10, 2014, DiAntonio
received a notice of award letter from the Social Security
Administration.  Pl.'s First Am. Mot. Remand, Ex. A, Notice
Award ("Award Letter"), ECF No. 27-1.  The letter stated that
DiAntonio became disabled within the meaning of the relevant
Social Security regulation on August 28, 2013, which is one day
after DiAntonio's initial application was rejected by the
hearing officer.  Id.; Admin. R. 29.

## II.   LEGAL STANDARD

### A.   Standard of Review

Pursuant to 42 U.S.C. section 405(g), this Court has
jurisdiction over this action and can "enter, upon the pleadings
and transcript of the record, a judgment affirming, modifying,
or reversing the decision of the Commissioner of Social
Security."  42 U.S.C. § 405(g).  This Court must uphold the
findings of the Commissioner unless the Commissioner "committed
a legal or factual error in evaluating a particular claim."
Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16
(1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885
(1989)) (internal quotation marks omitted).  The question
whether the Commissioner applied the proper legal standard is
reviewed de novo.  Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir.

2001). Findings of fact "are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (internal citation omitted).

The Commissioner's findings must be upheld when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)) (internal quotation marks omitted). The hearing officer, not a reviewing court, has the authority to make credibility determinations, draw factual inferences from the record, and resolve conflicts in the evidence. Rodriguez, 647 F.2d at 222. Thus, this Court must affirm the Commissioner's decision even if the record could justify a different conclusion so long as the decision is supported by substantial evidence. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

### B. Social Security Disability Standard

A person is disabled within the meaning of the Social Security Act if he or she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulation requires the hearing officer to employ a five-step analysis to evaluate a disability claim. See 20 C.F.R. § 404.1520(a)(4). At step one, the hearing officer must determine whether the applicant has engaged in substantial gainful activity. Id. § 404.1520(a)(4)(i). If he or she is engaged in substantial gainful activity, he or she will not be found disabled. Id. Substantial activity is defined as work that involves significant physical or mental activities. Id. § 404.1572(a). Gainful work activity means work activity done for pay or profit, whether or not profit is realized. Id. § 404.1572(b).

At step two, the hearing officer must determine whether the applicant has a severe medically determinable impairment or a combination of impairments that is severe. Id. § 404.1520(a)(4)(ii). An impairment or a combination of impairments is severe if an applicant has a significant limitation in performing basic work activities. Id. § 404.1520(c). If the applicant is not found to have a severe impairment or a combination of impairments that are severe, a disability determination review may stop here. Id. §

404.1520(a)(4)(ii).  If step two is satisfied, the analysis
proceeds to step three.  Id.

At step three, the hearing officer will decide whether the
applicant's impairment or combination of impairments meets or
equals the severity of an impairment listed in 20 C.F.R. Section
404, Subpart P, Appendix 1 and meets the duration requirement.
Id. § 404.1520(a)(4)(iii).  If the applicant satisfies this
step, he or she will be found disabled.  Id.  If the applicant
fails step three, the hearing officer must determine the
applicant's RFC before moving on to step four.  Id. §
404.1520(e).  An individual's RFC is his or her ability to do
physical and mental work activities given the physical or mental
limitations created by his or her medical impairments.  Id. §
404.1545(a)(1).  In evaluating a claimant's RFC, the hearing
officer must consider all of the relevant evidence in the
record, including the applicant's impairments that are not
severe.  Id. § 404.1545(a)(3).

At step four, the hearing officer will evaluate whether the
applicant still retains the RFC to carry out his or her past
relevant work.  Id. § 404.1520(a)(4)(iv).  Past relevant work is
defined as the work the applicant has performed within the last
fifteen years.  Id. § 404.1560(b)(1).  In addition, the work
must have lasted long enough for the applicant to acquire the
necessary skills to perform it.  Id.  If the applicant is able

to perform his or her past relevant work, the hearing officer must find the applicant not disabled.  Id. § 404.1520(a)(4)(iv).

At step five, the last step of the evaluation, the hearing officer looks at the applicant's RFC, along with his or her age, education, and work experience, to determine whether the applicant can do any other work.  Id. § 404.1520(a)(v).  If the applicant cannot do any other work, he or she is disabled.  Id. If not, he or she is not disabled.  Id.

From step one to step four, the applicant bears the burden of proof that he or she is disabled within the meaning of the regulation.  Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982) (citing Sherwin v. Sec'y of Health & Human Servs., 685 F.2d 1, 2 (1st Cir. 1982)).  At step five, the Commissioner has the burden of proof of showing that the applicant can do other work in the national economy despite his or her physical and/or mental limitations.  Id.

## III. THE HEARING OFFICER'S DECISION

At step one, the hearing officer first found that DiAntonio had not engaged in substantial gainful activity since September 2, 2011, which is the alleged disability onset date.  Admin. R. 16.  Proceeding to step two, the hearing officer determined that DiAntonio's impairments, including hypothyroidism status post thyroid cancer, degenerative disc disease, depression, and generalized anxiety disorder, were severe under the meaning of

16

the regulation.  Id. at 17.

At step three, the hearing officer reviewed DiAntonio's impairments and decided that her impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Section 404, Subpart P, Appendix 1.  Id. at 17.  The hearing officer first looked at DiAntonio's physical impairments and decided that her conditions did not meet the severity criteria in any of the listed impairments, including section 1.00 for the musculoskeletal system or section 14.00 for immune system disorders.  Id.  Next, he reviewed DiAntonio's mental impairments and determined that she did not meet the criteria of listed impairments, including section 12.04 for affective disorders and section 12.06 for anxiety-related disorders.  Id. The hearing officer found that she had mild restriction in activities of daily living, moderate restrictions in social functioning, mild restrictions with regards to concentration, persistence, or pace, and no episodes of decompensation.  Id. at 18-19.

Next, the hearing officer determined that DiAntonio retained the RFC to perform sedentary work.  Id. at 19-20.  Due to her impairments, DiAntonio's capacity should be limited to the extent that she could never climb ladders, ropes, or scaffolds; that she could only occasionally stoop, crouch, kneel, and crawl; that she must avoid concentrated exposure to extreme

cold; and that she should have only occasional interaction with the public and only occasional interaction with co-workers with no tandem tasks.  Id.

At step four, the hearing officer found that DiAntonio could not do her past relevant work as a dental assistant.  Id. at 27. At step five, nonetheless, DiAntonio was found not disabled because there were a significant number of jobs in the national economy that she could perform considering her age, education, work experience, and RFC.  Id.  In making his findings, the hearing officer relied on the vocational expert's testimony. Id. at 28.  The vocational expert testified that DiAntonio could work as a table worker, an assembler, and a surveillance system monitor.  Id.  Even though DiAntonio could not perform the full range of sedentary work due to her additional limitations, the vocational expert found that she could do at least three jobs mentioned above that exist in the national economy in significant numbers.  Id.

## IV. ANALYSIS

DiAntonio challenges the decision of the Commissioner on three grounds.  First, she argues that the hearing officer's findings on DiAntonio's RFC were not supported by substantial evidence.  Pl.'s Mot. Reverse 4.  Second, she argues that the hearing officer erred in assigning insufficient weight to DiAntonio's treating source opinions and to the Disability

Evaluation Services' finding that DiAntonio was disabled. Id. at 4, 6. Since the hearing officer's RFC assessment contained error, the hearing officer's finding at step five must fail, DiAntonio argues, and she should be found disabled under the Social Security regulation. Id. at 13. In a separately submitted motion to remand, she asks this Court to remand the case because new and material evidence – a subsequent favorable award letter sent to her on October 11, 2014 – mandates a second hearing. Pl.'s First Am. Mot. Remand 2-3.

**A.   RFC Assessment**

DiAntonio requests that this Court reverse the Commissioner's decision and grant her Social Security benefits because the hearing officer's finding as to her residual capacity was not based on substantial evidence. Pl.'s Mot. Reverse 4. DiAntonio does not challenge the hearing officer's finding of DiAntonio's physical RFC; rather, DiAntonio's mental RFC assessment is in dispute. Specifically, she makes three arguments as to why the hearing officer's decision was not based on substantial evidence. First, DiAntonio argues that the hearing officer erred in finding her to be only mildly limited in concentration, persistence, or pace when both state agency reviewing physicians wrote in their reports that DiAntonio had a moderate limitation. Id. at 5; Admin. R. 115, 146. Second, DiAntonio complains that her limitation as to social functioning

ought limit her mental RFC to a greater degree greater than it did in the hearing officer's determination. Pl.'s Mot. Reverse 7-8. Third, the hearing officer failed to take DiAntonio's periods of decompensation into consideration. Id. at 9.

The hearing officer determined that DiAntonio retained RFC to perform sedentary work with some exertional limitations and with only occasional contact with the public and co-workers with no tandem tasks. Admin. R. 19-20. In making this determination, the hearing officer found that DiAntonio's own description of her condition was more severe than her objective medical evidence showed, and he resolved this tension by considering not only medical evidence but also DiAntonio's testimony at the hearing and other relevant records in the file. See id. at 25.

After reviewing the hearing officer's written conclusion, all of the administrative record, and all of the involved parties' briefs, this Court upholds the Commissioner's RFC findings. The hearing officer's finding is conclusive when it is supported by substantial evidence. Nguyen, 172 F.3d at 35. When a reasonable mind would conclude after reviewing the whole record that DiAntonio could perform sedentary work with some limitations, the hearing officer's finding is deemed to be supported by substantial evidence. See id. The hearing officer cited DiAntonio's testimony as a source of discrepancy between

DiAntonio's alleged functional limitation and her actual limitation. Admin. R. 25. During the hearing, DiAntonio testified that she could drive a car around for two miles at a time. Id. at 55. When her nine-year-old daughter was around, she cared for her daughter, did household chores, and played games and cards with her daughter. Id. at 56-59, 62. The hearing officer added that DiAntonio seemed to be "a fine historian, with good memory and with a good ability to maintain focus on the hearing at hand." Id. at 19. The hearing officer concluded that DiAntonio still retained the ability to perform at least sedentary jobs because she could still do chores, drive around, and maintain a fair amount of concentration. Id. at 26. The hearing testimony provided the hearing officer substantial evidence to conclude that DiAntonio retained RFC to perform sedentary work with limitations. Thus, the finding must be upheld.

DiAntonio claims that the hearing officer erred in his findings because the reviewing physicians' opinions diverged from the hearing officer's ultimate conclusions. Pl.'s Mot. Reverse 5. Two reviewing physicians, Dr. Collins-Wooley and Dr. Spangler, opined that DiAntonio had moderate limitation in consistence, persistence or pace, but the hearing officer, after reviewing the whole record, decided that DiAntonio had only mild limitation in that area. Admin. R. 19, 115, 143. The hearing

officer alone is entrusted with resolving evidentiary conflicts.
Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2 (1st
Cir. 1987). DiAntonio's testimony created inconsistencies as to
the degree of her RFC, and the hearing officer duly considered
the opinion of the two reviewing physicians. Admin. R. 26. In
determining DiAntonio's RFC, the hearing officer assigned the
opinions of the reviewing physicians "some weight" in his
analysis. Id. He cited to the record and explained how he
resolved conflicts between DiAntonio's testimony and the
objective medical evidence. Id. at 25. Even though medical
records might suggest the possibility that DiAntonio had some
greater limitation in concentration, persistence, or pace and
could not perform sedentary work due to her mental limitation,
this Court cannot say that hearing officer erred merely on the
basis that a different outcome was possible. See Rodriguez
Pagan, 819 F.2d at 3. The hearing officer duly exercised his
authority to resolve inconsistencies in the record and supported
his evidence with substantial evidence in the record.

DiAntonio further argues that the hearing officer erred in
finding she had the RFC to have occasional contact with the
public and co-workers with no tandem tasks. Pl.'s Mot. Reverse
7-8. DiAntonio contends that her limitation in social
functioning should prohibit her from any kind of contact with
the public and co-workers. Id. At the RFC assessment stage,

the claimant has the burden of proof that she is disabled,
Goodermote, 690 F.2d at 7, and nowhere in the record DiAntonio
does show her impairments prevented her from engaging in any
kind of interaction with the public and co-workers. The
reviewing physicians opined that DiAntonio had only a mild
limitation in social functioning. Admin. R. 115, 143. The
hearing officer wrote in his decision that "the record as a
whole supports a finding that the claimant's anxiety would be
more limiting to her social functioning rather than
concentration, persistence or pace." Id. at 26. Nevertheless,
the hearing officer did not say her limitation did not permit
any kind of interaction with the public and co-workers; rather,
the hearing officer determined that DiAntonio might have
occasional contact with the public. Id. at 20. The hearing
officer referenced DiAntonio's functional report, which
indicates that she regularly goes to doctor appointments, the
market, and the Laundromat. See id. at 25, 345-46. On her
functional report, DiAntonio also indicated that she gets along
with authority figures "okay." Id. at 348. DiAntonio's
argument is unsubstantiated by the record, and the hearing
officer's determination that DiAntonio could occasionally
interact with the public and co-workers is supported in the
record. Thus, the hearing officer's finding must be upheld.

DiAntonio's argument that the hearing officer failed to consider DiAntonio's prior episodes of decompensation is without merit. The Social Security regulation states that when evaluating a claimant's mental RFC, the hearing officer must consider episodes of decompensation as well as other criteria in Paragraph B of section 12.00. 20 C.F.R. Part 404, Subpt. P, App. 1 §§ 12.00(A), 12.00(C). The medical opinions submitted by reviewing physicians stated that DiAntonio had one or two extended episodes of decompensation. Admin. R. 115, 143. In contrast, the hearing officer stated that "[t]he claimant has experienced no episodes of decompensations, which have been of extended duration" and decided that DiAntonio retained RFC to do simple work. Id. at 19-20. The hearing officer cited to the fact that "[DiAntonio's] medications were successful" and "[DiAntonio's] medications were effective." Id. at 25. The hearing officer reasoned that DiAntonio's episodes of decompensation were well managed by medication; thus, DiAntonio was able to do sedentary work. Since substantial evidence in the record supports his finding, this Court will not disturb it.

**B. Weight Assigned to Treating and State Sources**

DiAntonio argues that the hearing officer's decision must be reversed because he failed to assign appropriate weight to DiAntonio's treating source and the Disability Evaluation Services finding. Pl.'s Mot. Reverse 6, 11. Dr. Alexandre,

DiAntonio's primary care physician, opined that DiAntonio was unable to work due to malignant neoplasm of the thyroid gland and hypothyroidism, Admin. R. 455, and Theodore noted that DiAntonio "has not been able to work," id. at 514. Also, the Disability Evaluation Services physician opined that DiAntonio was disabled for the purpose of TAFDC program. Id. at 756, 778.

In assessing DiAntonio's mental residual capacity assessment, the hearing officer gave "some weight" to Dr. Alexandre's opinion. Id. at 26. Dr. Alexandre's opinion earned only some weight because her opinion did not proffer "any limitation or functional capacity assessment for the claimant." Id. The hearing officer gave only "little weight" to the Disability Evaluation Services finding that DiAntonio was disabled because it was inconsistent with other evidence in the record as a whole and because the determination of disability is solely granted to the Commissioner. Id. The hearing officer considered Theodore's letter but noted that it "does [not] proffer an opinion regarding the claimant's functional capacity, limitations, or abilities." Id. at 27.

The hearing officer cannot ignore medical evidence that goes uncontroverted. Nguyen, 172 F.3d at 35. When evidence in the record creates material conflict, the hearing officer must discharge his duty to "weigh the evidence, resolve the material conflicts in the testimony, and determine the case accordingly."

Agresti v. Sec'y of Health & Human Servs., 631 F. Supp. 1245, 1250 (D. Mass. 1986) (citing Richardson v. Perales, 402 U.S. 389, 399 (1979)).

When dealing with conflicting medical evidence, the opinion of a treating source should garner controlling weight because a treating physician by nature is the source most capable of providing a "detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). The hearing officer does not have to give controlling weight to the opinion of a treating source, however, when it is inconsistent with other substantial evidences in the record. See id. § 404.1527(c)(4). The final decision whether to give controlling weight to a treating source remains solely within the authority of the Commissioner. Id. § 404.1527(c).

DiAntonio's treating sources and the Disability Evaluation Services finding are in conflict with other substantial evidence in the record. Dr. Collins-Wooley noted that DiAntonio could "focus sufficiently for simple tasks at a reasonable pace" and perform simple work. Admin. R. 118-19. Also, based on DiAntonio's testimony and functional report, the hearing officer found that DiAntonio was capable of carrying out light housework and maintained the capacity to perform simple tasks. Id. at 25-26. The hearing officer explained his reasons for the assigned weight supported his conclusion with substantial evidence in

light of the whole record. Thus, this Court is bound to uphold the hearing officer's weight assignment and his finding.

### C. The Commissioner's Step Five Analysis

DiAntonio challenges the hearing officer's step five finding, arguing it was not supported by substantial evidence. Pl.'s Mot. Reverse 13. Specifically, she claims that because the hearing officer based his hypothetical questions to the vocational expert on a flawed analysis of her RFC, the vocational expert's resulting answers cannot constitute substantial evidence to support the hearing officer's ultimate finding. Id.

This Court upholds the hearing officer's finding at step five. At step five, the Commissioner bears the burden of proof. Goodermote, 690 F.2d at 7. The Commissioner is responsible for providing "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's] RFC and vocational factors." 20 C.F.R. § 404.1560(c)(2). DiAntonio's argument as to this issue hinges on her contention that the hearing officer's RFC analysis was flawed - but, as has been discussed above, this Court has already ruled that the RFC analysis was permissible. Accordingly, there was nothing wrong with the hypothetical questions the hearing officer posed to the vocational expert, and thus the vocational expert's testimony constitutes

substantial evidence to support the hearing officer's finding at step five. Szumylo v. Astrue, 815 F. Supp. 2d 434, 441 (D. Mass. 2011) (Collings, M.J.). The hearing officer heard the vocational expert's testimony and found that there are jobs in significant number in this economy that DiAntonio can perform. Admin. R. 27. Since the hearing officer's step five analysis is supported by substantial evidence, his finding must be upheld.

### D. Subsequent Favorable Decision

On October 15, 2014, DiAntonio, pursuant to sentence six of 42 U.S.C. section 405(g), submitted a motion to remand this case to the Commissioner for reconsideration. Pl.'s First Am. Mot. Remand. By that time, she had received a favorable decision on her subsequent application for disability benefits - DiAntonio was found to be disabled from August 28, 2013, one day after DiAntonio received an unfavorable decision on the application at issue here. Award Letter; see also Pl.'s Mot. Remand 1. DiAntonio argues that the subsequent favorable decision constitutes new and material evidence that entitles her a reconsideration before the Commissioner. Pl.'s First Am. Mot. Remand 1.

A remand under 42 U.S.C. section 405(g) is appropriate only when the court determines that "further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is

essential to a fair hearing." <u>Evangelista</u> v. <u>Sec'y of Health &
Human Servs.</u>, 826 F.2d 136, 139 (1st Cir. 1987). Further
evidence must be "both new and material, as those terms are used
in the statute." <u>Id.</u> (internal quotation marks omitted).

The First Circuit addressed a similar question to the one
currently before this Court in <u>Gill</u> v. <u>Colvin</u>, No. 13-1792 (1st
Cir. Apr. 9, 2014) (unpublished). There, the First Circuit held
that a subsequent favorable decision letter with an onset date
just a day after the denial in the previous application does not
constitute new and material evidence which allows a remand under
42 U.S.C. section 405(g). <u>Id.</u> at 5. An award letter with a
very brief summary of evidence to support the award does not by
itself amount to new and material evidence. <u>Id.</u> Here,
DiAntonio's letter did not even have a summary of evidence used
to support her subsequent favorable decision. Award Letter.
Thus, her letter does not constitute new and material evidence
to support a remand.

## V.  CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's Motion to Affirm the Commissioner, ECF No. 22 and DENIES the Plaintiff's Motion to Reverse, ECF No. 17, and the Plaintiff's First Amended Motion to Remand, ECF No. 27.

**SO ORDERED.**

WILLIAM G. YOUNG
DISTRICT JUDGE